JUDGE ELLIOTT
delivered the opinion of the court.
The wife of appellee was the aunt of appellant, and cherished for her a relation of love and affection.
During a part of the year 1874 appellee and wife resided in Frankfort, which was also the residence of appellant; and Mrs. Botts being in very delicate health, received all the attention from appellant which a refined, generous, and kind-hearted niece could bestow. Indeed so constant were her visits and so close her attention to the wants of her aunt in her failing health that she might, with propriety, be called her tender and efficient nurse. She seemed to take charge of her aunt’s household affairs when at her house, and relieved her of all physical and mental concern about them. In January, 1875, appellee and wife removed to the house of appellant’s father, in order that the aunt could have the constant society and services of her favorite niece during her sickness. They remained there till a day or two before the August election, 1875, when they went to reside at their country residence a few miles from Frankfort, accompanied by appellant, who became a constant watcher at the bedside of her declining relative and friend, devoting her entire time and attention in nursing her *301 and supplying her wants, and overlooking the affairs of the household up to the time of her death.
Doubtless the appellant was prompted by the generous impulses of a niece’s love in the sacrifices she was making for her aunt. But her vigils over her aunt’s sick-bed, and her' •exhaustive service to alleviate her sufferings, had not continued long till her aunt informed her that she was her favorite relation, and as she had received more than $5,000 from the •estate of her father, she intended to give $5,000 to her. In pursuance of this determination, she made out a written memorandum, and handed it to appellant, by which she requested the .appellee, when she was in her grave, to deliver over to appellant $5,000, which she said she had inherited from her ancestor.
There is no evidence in this record that this paper had ever heen seen by appellee, or that he had been notified of its exist■ence until after the death of his wife.
It is true that during her sickness the appellee’s wife, in the presence of several persons, asked him if he would carry out her request in regard to her niece, and he would indicate his assent without expressing it; and this evidence is adduced to prove that he promised that he would pay appellant $5,000. But this assent to his wife’s request ought to have but little weight, when it is considered that a dissent from his wife’s wishes, openly expressed, might have hastened her decline, or produced her death. Appellee says that his understanding of his wife’s request was that he must pay her niece, the appellant, well for her services.
After the death of his wife, appellee was informed of the contents of the writing which his -wife had delivered to appellant, and which indicated the disposition which she desired made of her property; and appellant and her mother both prove that he said he would carry out the' written request of his wife, so far as appellant was concerned, by paying her the $5,000 named therein.
*302 In the conversations between appellant and appellee, after the death of the latter’s wife, it was not pretended that appellant’s services were worth $5,000; but the promises to pay that sum seem to have been made because of the writing which his wife had left, indicating the disposition that she desired made of the property which she considered she had brought to the possession of her husband during the marriage. The promise to pay the $5,000 seems not to have been founded on the value of appellant’s services, but upon the written request of his deceased wife. He did not agree and contract with appellant that, for and in consideration of the services which she had rendered his deceased wife during her last illness, he would pay her $5,000; but, instead thereof, when informed by appellant of the written request of his departed wife to pay her $5,000, he said that as she (appellant) had performed valuable services for him during his wife’s illness, in her attentions to his family, he would carry out the written request, so far as she was concerned, by paying her the amount indicated by it.
It can not be presumed that appellee promised to pay the $5,000 in consideration of the services which had been performed by appellant for his family, when it is considered that the services, according to the proof, did not amount in value to one tenth of the sum promised. The great inadequacy of the value of the services when compared with amount promised makes it plain that appellant’s services were not the foundation of appellee’s promise to pay the $5,000. We therefore conclude, from the evidence, that at the time he was shown the written disposition which his wife desired made of her property, he was in tears and sobbing over her grave, and was then willing to obey her request; but that when his tears dried and his paroxysms of grief subsided, he changed his mind, and was only willing to pay appellant a liberal value for the services she performed and the consolation she administered around the bed of his dying wife.
*303 But if appellee, after the services had been performed, had promised to pay $5,000 for them, when their real value was only $500, the recovery of such a price would be extremely doubtful.
Mr. Parsons, in his work on Contracts (3d edition, p. 363, vol. 1) lays down the doctrine that "the courts, both in law and in equity, refuse to disturb contracts on questions of mere inadequacy, whether the consideration be of benefit to the promisor or injury to the promisee; nevertheless, if an agreement be unreasonable or unconscionable, but not in such a way or to such a degree as to imply fraud, courts of equity will not decree a specific performance, and though courts of law will not declare the contract void, they will give only reasonable damages to the plaintiff who seeks compensation for breach of it.” And the same doctrine is held in Cutler v. Howard, reported in 8 Massachusetts Eeports, and another case reported in 12 Massachusetts Eeports.
From these authorities and from the evidence we are constrained to the conclusion that the value of appellant’s services is all that she is entitled to. It is not pretended that the written request, as to the disposition of her property, executed by appellee’s wife, and delivered to appellant, is binding on the appellee.
As to the real value of appellant’s services in such a case, it is hard to estimate. The tender expressions of sympathy and the affectionate caresses of appellant doubtless cheered her loving aunt and smoothed the pillow of declining health.
The proof is ample that appellant was not only vigilant in her attention to her aunt, but that she lingered around her bedside night and day, watching every symptom in the progress of her malady, and easing her agony by her tears of love and sympathy; and, of course, money can not reward the bestowal of such services at such a time; still in a court of law the appellant could not recover more than she proved her *304 services to be worth, and we are of opinion that the jury gave her the full- amount to which she was entitled from the proof.
We are also of opinion that the court correctly gave the law of appellant’s case to the jury, and properly overruled the instructions asked by her counsel.
Wherefore the judgment is affirmed.